UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KYLE WRIEDT,

Plaintiff,

v. Case No. 26-cv-1290-bhl

DOMINIC STRACK,
TONIA ROZMARYNOSKI,
ERIN JANSKY,
JONATHON DAUSEY, and
PEYTON EINERSON,

Defendants.

---

**SCREENING ORDER**

---

Plaintiff Kyle Wriedt, who is currently serving a state prison sentence at Green Bay Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Wriedt's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

**MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE**

Wriedt has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). As required under 28 U.S.C. §1915(a)(2), Wriedt has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint and has been assessed and paid an initial partial filing fee of $17.88. Wriedt's motion for leave to proceed without prepaying the filing fee will be granted.

**SCREENING OF THE COMPLAINT**

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or

malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

According to Wriedt, on April 22, 2026, Defendant Dominic Strack sprayed him with OC spray, "claiming he was damaging his cell." Wriedt asserts that he was removed from his cell by Strack and Defendants Jonathan Dausey and Tonia Rozmarynoski. Wriedt states that he was "placed in a restraint chair and stripped of clothing for his verbal aggression towards staff." After entering his new cell, Wriedt demanded that he be given clean clothes and a clean mattress, but Rozmarynoski denied his requests "due to his behavior." Wriedt admits that he responded by grabbing the upper food port in his door and refusing to let go until he was given clean clothes and a clean mattress. This led to Stark, Dausey, and Defendant Peyton Einerson "repeatedly and aggressively clos[ing] Wriedt's hands in the food port, causing injury and profuse bleeding." Wriedt apparently continued to disobey orders and refused to let go of the food port, so

Rozmarynoski deployed an "ICE shield," making contact numerous times even though she knew Wriedt was epileptic and the electric shock could cause seizures. Wriedt asserts that he finally let go of the food port and pulled his hands inside. He states that he showed Rozmarynoski his injuries, and she notified the health services unit. He states that Defendant Nurse Erin Jansky came to his cell front to view Wriedt's injuries. Wriedt asserts that she refused to treat his injuries, which increased his chance of infection. Wriedt asserts that he was still covered in OC spray and that his requests for a decontamination shower were ignored by Rozmarynoski for no reason. Dkt. No. 1.

## THE COURT'S ANALYSIS

Wriedt asserts that Defendants violated the Eighth Amendment when they used unnecessary and excessive force against him, refused to immediately provide him with a decontamination shower, clean clothes, and a clean mattress, and/or refused to provide him with medical care.

With regard to Wriedt's allegations of excessive force, the "central question" when evaluating whether force used against a prisoner is excessive is "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Fillmore v. Page*, 358 F.3d 496, 503 (7th Cir. 2004) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). Based on Wriedt's description of his interactions with the Defendant corrections officers, it appears that the officers used force against Wriedt in a good faith attempt to restore order and discipline in face of his persistent refusal to comply with their orders. Wriedt acknowledges that he had to be forcibly removed from his cell, that he was verbally aggressive toward officers to the point that he had to be placed in a restraint chair, and that he repeatedly refused to comply with orders to remove his hands from his food port, even after officers tried to close the food port. That being said, at screening, the Court must make all reasonable inferences in Wriedt's favor, and further development of the record is necessary before the Court can conclude that the officers' use of force was reasonable. Accordingly, Wriedt may proceed on an excessive force claim against Strack, Rozmarynoski, Einerson, and Dausey based on allegations that they used unnecessary and excessive force against him.

Wriedt fails, however, to state a claim against Rozmarynoski based on allegations that she refused to immediately comply with his demands for a decontamination shower, clean clothes, and a clean mattress. The Seventh Circuit has explained that "extreme deprivations are required to

make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). After all, "restrictive and even harsh" conditions are "part of the penalty that criminal offenders pay for their offenses." *Rhodes v. Chapman*, 452 U.S. 520, 561 (1979). Moreover, "it is not just the severity of the [condition], but the duration of the condition, which determines whether the conditions of confinement are unconstitutional." *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997). Wriedt acknowledges that he was noncompliant with orders and verbally aggressive toward officers. According to Wriedt, Rozmarynoski informed him that she would not honor his requests until he demonstrated he could control his behavior. This response does not suggest that she was deliberately indifferent to Wriedt's conditions of confinement. Instead, it suggests that she was faced with difficult circumstances and had only limited leverage to gain Wriedt's compliance. In any event, Wriedt does not allege how long he was deprived of a shower or clean clothes and a mattress. A brief deprivation, while perhaps uncomfortable, would not have created an excessive risk to Wriedt's health and safety. Moreover, Wriedt does not allege that he suffered any harm—other than frustration—from not immediately receiving what he demanded. *See Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011) ("In order to succeed in a § 1983 suit, a plaintiff must 'establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages.'").

Finally, Wriedt fails to state a claim against Nurse Jansky based on allegations that she refused to treat his injuries, whereby increasing his risk of infection. It appears that Wriedt suffered abrasions to his hands when corrections officers attempted to gain his compliance by closing the food port door. Jansky, at the request of Rozmarynoski, evaluated Wriedt's injuries through his cell door and determined that no treatment was required at that time. Wriedt disagrees with her decision, but nothing in the complaint suggests that Wriedt required immediate (or any) treatment. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (holding that "[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation"). As is well known, most abrasions heal without medical intervention. Wriedt also does not allege what harm he suffered from not receiving whatever unspecified treatment he believes Jansky should have offered. Wriedt asserts that by failing to "treat" him, Jansky increased his risk of contracting an infection, but it has long been held that allegations that a prison official failed "to prevent exposure to a risk of harm" does not state a claim under the Eighth Amendment. *Babcock v. White*,

102 F.3d 267, 272 (7th Cir. 1996); *see also*, *Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011) ("In order to succeed in a § 1983 suit, a plaintiff must 'establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages.'").

**IT IS THEREFORE ORDERED** that Wriedt's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Wriedt fails to state a claim against Erin Jansky, so the clerk's office is directed to terminate her from this action.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Wriedt's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Dominic Strack, Tonia Rozmarynoski, Jonathon Dausey, and Peyton Einerson.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Dominic Strack, Tonia Rozmarynoski, Jonathon Dausey, and Peyton Einerson shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the agency having custody of Wriedt shall collect from his institution trust account the $332.12 balance of the filing fee by collecting monthly payments from Wriedt's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Wriedt is transferred to another institution, the transferring institution shall forward a copy of this Order along with Wriedt's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Wriedt is located.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge

Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Wriedt is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Wriedt may find useful in prosecuting this case.

Dated at Milwaukee, Wisconsin this 14th day of September, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge